FILED - GR
November 28, 2012 4:55 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:_MKC /_____ SCANNED BY ____ /__/__

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

MARK NOWELL BASNIGHT,
JASON LANELLE TOWNSEND,
JEFFREY LONDELE PETTWAY,
RACHAEL PAGE, and
RHONDA YOLANDA GUYTON

      Defendants.

_____/

No. **1:12-cr-284**

Hon. **Robert J. Jonker
U.S. District Judge**

**INDICTMENT**

The Grand Jury charges:

## COUNT 1

**(Conspiracy to Commit Financial Institution Fraud, to Produce and Transfer False Identification Documents and to Possess Document-Making Implements)**

From in or about March, 2011, until in or about September, 2011, in Ingham County, in the Southern Division of the Western District of Michigan,

**MARK NOWELL BASNIGHT,
JASON LANELLE TOWNSEND, and
JEFFREY LONDELE PETTWAY,**

defendants, did unlawfully, willfully, and knowingly conspire, confederate and agree with one another, and with other individuals known to the grand jury, to commit one or more of the following federal offenses:

(a)     to commit fraud against various financial institutions by knowingly executing, or attempting to execute, a scheme and artifice to defraud that included applying for loans

1

through the use of the identities of other individuals in violation of Title 18, United States Code, Section 1344(1);

(b) to knowingly produce, without lawful authority, false identification documents, including, but not limited to, the following:

1. Social Security Account Number Cards;
2. Driver licenses for the States of Michigan, Illinois and Florida; and
3. United States Passport Cards;

that appeared to be issued by or under the authority of the United States and/or which were produced using materials which had been shipped and transported in interstate or foreign commerce, such materials including, but not being limited to, one or more of the following items that were produced outside the State of Michigan: a Dell computer; Epson color ink; a Western Digital external hard drive; a Carl six-inch rotary trimmer paper cutter; an X-acto twelve-inch paper trimmer; a Cosco self-inking print kit; an Easyidea minilam sealer; Epson semi-gloss photo-paper;

in violation of Title 18, United States Code, Sections 1028(a)(1), 1028(b)(1)(A)(i) & (ii), and 1028(c)(1) & (c)(3)(A);

(c) to knowingly transfer one or more false identification documents as described above and that appeared to be issued by or under the authority of the United States and/or which were produced using the materials which had been shipped and transported in interstate or foreign commerce as itemized above, knowing that each such document was produced without lawful authority, in violation of Title 18, United States Code, Sections 1028(a)(2), 1028(b)(1)(A)(i) & (ii), and 1028(c)(1) & (c)(3)(A);

2

(d)    to knowingly possess document-making implements with the intent that such document-making implements would be used in the production of false identification documents, which implements included, but were not limited to, one or more of the following: a Dell computer; a Western Digital external hard drive; a Carl six-inch rotary trimmer paper cutter; an X-acto twelve-inch paper trimmer; a Cosco self-inking print kit; an Easyidea minilam sealer; Epson semi-gloss photo paper; a State of Utah Department of Public Health embosser;

each such item being suited for making such identification documents, in violation of Title 18, United States Code, Sections 1028(a)(5), 1028(b)(1)(C), and 1028(c)(1).

## OBJECT OF THE CONSPIRACY

The object of the conspiracy was for the participants to profit from loan proceeds obtained by fraud. The conspiracy included the agreement to produce and transfer false identification documents that would then be used by the loan applicants to misrepresent their identity, and thereby their credit-worthiness, to the prospective lenders.

## BACKGROUND AND MANNER AND MEANS OF THE CONSPIRACY

1. As of March, 2011, **MARK NOWELL BASNIGHT** was a federal prisoner incarcerated at a federal correctional institution in West Virginia.

2. As of March, 2011, Eric Deshawn Pettway resided in Ingham County, within the Western District of Michigan, and knew **MARK NOWELL BASNIGHT** from prior dealings in Michigan.

3. At a time unknown to the grand jury, but no later than March, 2011, **MARK NOWELL BASNIGHT** contacted Eric Deshawn Pettway by telephone in the Western District of Michigan to discuss whether Pettway could produce false identification documents, including social security account number cards, driver's licenses, and passport cards, if he was provided with the names and means of identification of individuals.

4. It was part of the conspiracy that **MARK NOWELL BASNIGHT** and Eric Deshawn Pettway agreed that they would use the false identification documents produced by Eric Deshawn Pettway to cause false and fraudulent loan applications to be made to financial institutions in several states.

5. It was further part of the conspiracy that **MARK NOWELL BASNIGHT** told Eric Deshawn Pettway that an individual named "Kenny" would provide Eric Deshawn Pettway with some of the names and means of identification of the individuals whose identities they

4

would use for the purpose of applying for the loans. Unknown to either **MARK NOWELL BASNIGHT** or Eric Deshawn Pettway, "Kenny" was actually an East Lansing, Michigan, Police Officer who was working with other law enforcement who were communicating with a cooperating witness incarcerated with **MARK NOWELL BASNIGHT** in federal prison in West Virginia.

      6.     It was further part of the conspiracy that Eric Deshawn Pettway would produce false identification documents utilizing the names and means of identification provided by "Kenny," or names and means of identification that he obtained from others. These false identification documents would contain the photographs of individuals who agreed to apply for the loans to make it appear as if the loan applicants were actually the individuals whose means of identification were contained on the false identification documents produced by Eric Deshawn Pettway.

      7.     In furtherance of the conspiracy, **JASON LANELLE TOWNSEND,** agreed to apply for loans with the names and means of identification of other individuals that appeared on the false identification documents containing his photograph that were produced by Eric Deshawn Pettway. **JEFFREY LONDELE PETTWAY** agreed to transfer the false identification documents and to accompany **JASON LANELLE TOWNSEND** to the financial institutions where he would apply for the loans utilizing the identities of other individuals.

      8.     It was a further part of the conspiracy that once the loan proceeds were obtained by utilizing the false identification documents, the members of the conspiracy would share the fraudulently-obtained loan proceeds.

## OVERT ACTS

In furtherance of the conspiracy, and to effect the object thereof, at least one of the following overt acts was committed in the Western District of Michigan by a member of the conspiracy.

1. On or about May 13, 2011, **MARK NOWELL BASNIGHT** called Eric Deshawn Pettway in the Western District of Michigan and asked him whether he could prepare "university photos," passports, and "social sciences," meaning driver's licenses, passports, and social security account number cards.

2. On or about June 13, 2011, **MARK NOWELL BASNIGHT** called Eric Deshawn Pettway in the Western District of Michigan to advise him that he would be receiving a phone call from "Kenny" and that the loans would be six figures each and loan applications would be made in six states.

3. On or about June 20, 2011, **MARK NOWELL BASNIGHT** called Eric Deshawn Pettway in the Western District of Michigan and explained that the loan applications would take place in Arizona, California, Florida, Michigan, Virginia, Illinois, and New York. Eric Deshawn Pettway confirmed that he could produce identifications for those states, as well as passports, and indicated to **MARK NOWELL BASNIGHT** that he was ready.

4. On July 19, 2011, at a parking lot of a business in Okemos, Michigan, "Kenny" provided Eric Deshawn Pettway with the names, addresses and social security numbers for two individuals: one individual purportedly from Florida and another from Illinois. **JEFFREY LONDELE PETTWAY** accompanied Eric Deshawn Pettway to this meeting. "Kenny" requested that Eric Deshawn Pettway produce a driver's license and social security account number card for each individual.

6

5.      On or about July 20, 2011, **MARK NOWELL BASNIGHT** and Eric Deshawn Pettway spoke by telephone between the Western District of Michigan and West Virginia regarding Eric Deshawn Pettway's meeting with "Kenny." Eric Deshawn Pettway requested that **MARK NOWELL BASNIGHT** send him a letter explaining what he needed to do with the information provided by "Kenny."

6.      On or about July 21, 2011, at the parking lot of the same business in Okemos, Michigan, **JEFFREY LONDELE PETTWAY**, at the direction of Eric Deshawn Pettway, transferred to "Kenny" two social security account number cards, a Florida driver's license, and an Illinois driver's license, that were produced by Eric Deshawn Pettway. These false identification documents contained the names and personal identifiers previously provided to Eric Deshawn Pettway by "Kenny."

7.      At a time unknown to the grand jury, but after July 21, 2011, **MARK NOWELL BASNIGHT** sent a letter to Eric Deshawn Pettway in Lansing, Michigan. **MARK NOWELL BASNIGHT** advised Eric Deshawn Pettway of his plan to obtain a quick line of credit in the name of an individual with a credit score of seven hundred or better and instructed Eric Deshawn Pettway to produce a passport, driver's license and social security account number card with the personal identifiers for this person.

8.      On or about July 26, 2011, **MARK NOWELL BASNIGHT** and Eric Deshawn Pettway had a phone call between the Western District of Michigan and West Virginia during which **MARK NOWELL BASNIGHT** discussed the quick credit loan and the need for the means of identification for someone with a credit score of at least 700, along with IRS W-2 Forms. Eric Deshawn Pettway confirmed for **MARK NOWELL BASNIGHT** that he had the means of identification for such an individual and stated that the individual was a local attorney.

9. On August 10, 2011, Eric Deshawn Pettway met "Kenny" in Lansing, Michigan, and transferred to "Kenny" a false Michigan driver's license, United States passport card, and Form W-2 Wage and Tax Statements, for a Lansing-area attorney whose initials are M.B.G. The Michigan driver's license and the passport card contained the photograph of **JASON LANELLE TOWNSEND**.

10. On or about August 30, 2011, **MARK NOWELL BASNIGHT** sent a letter from West Virginia to "Dell Harris" at an address in Lansing, Michigan. "Dell Harris" was an alias given to Eric Deshawn Pettway by **MARK NOWELL BASNIGHT**. The letter described a plan for Eric Deshawn Pettway and individuals he had recruited to serve as applicants for a quick line of credit at Fifth Third Bank through an account manager affiliated with **MARK NOWELL BASNIGHT**.

11. On or about September 12, 2011, Eric Deshawn Pettway met with **JASON LANELLE TOWNSEND** in Lansing, Michigan, where they discussed their plan to obtain a $20,000.00 loan from Fifth Third Bank in the vicinity of Detroit, Michigan, using the false identification documents produced by Eric Deshawn Pettway and containing the photograph of **JASON LANELLE TOWNSEND**.

18 U.S.C. § 1028(f)
18 U.S.C. § 1349
18 U.S.C. § 1344
18 U.S.C. § 1028(a)(1)
18 U.S.C. § 1028(a)(2)
18 U.S.C. § 1028(a)(5)
18 U.S.C. § 1028(b)(1)(A) and (C)

## COUNT 2

### (Aggravated Identity Theft)

On or about February 19, 2010, in Ingham County, in the Southern Division of the Western District of Michigan,

**RACHAEL PAGE,**

defendant, during and in relation to the unlawful production of false identification documents in violation of 18 U.S.C. § 1028(a)(1), as charged in Count 6 of this Indictment and incorporated as if alleged herein, did knowingly transfer, possess, and use, without lawful authority, a means of identification of victim M.B.G.

Specifically, defendant **RACHAEL PAGE** transferred by electronic means from her cellular telephone to the cellular telephone of Eric Deshawn Pettway the name, date of birth, driver's license number, and social security account number of victim M.B.G., knowing that Eric Deshawn Pettway intended to use these means of identification to produce false identification documents.

18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 1028A(c)(4)
18 U.S.C. § 1028(a)(1)
18 U.S.C. § 1028(d)(7)
18 U.S.C. § 2

## COUNT 3

**(Unlawful Transfer of a Means of Identification)**

In or about May, 2011, in Ingham County in the Southern Division of the Western District of Michigan,

**RHONDA YOLANDA GUYTON,**

defendant, did knowingly transfer, possess, and use, without lawful authority, in a manner affecting interstate commerce, a means of identification of another person with the intent to commit, or to aid or abet another person in the commission of, the unlawful production of false identification documents in violation of 18 U.S.C. § 1028(a)(1).

Specifically, on or about May 9, 2011, and May 26, 2011, with knowledge that the means of identification would be used to produce false identification documents, **RHONDA YOLANDA GUYTON** transferred by electronic message from her cellular telephone to the cellular telephone of Eric Deshawn Pettway the names, dates of birth, and social security numbers of several individuals known to the grand jury.

18 U.S.C. § 1028(a)(7)
18 U.S.C. § 1028(d)(7)
18 U.S.C. § 1028(c)(3)(A)
18 U.S.C. § 1028(b)(2)(B)

## COUNT 4

### (Unlawful Production of False Identification Documents)

On or about July 21, 2011, in Ingham County, in the Southern Division of the Western District of Michigan,

**MARK NOWELL BASNIGHT,**

defendant, did knowingly and without lawful authority produce, and did aid and abet Eric Deshawn Pettway in the production of, false identification documents that appeared to be issued by or under the authority of the United States and the production of which was in or affected interstate commerce.

Specifically, defendant **MARK NOWELL BASNIGHT** produced, or aided and abetted Eric Deshawn Pettway's production of, one fraudulent Illinois driver's license, one fraudulent Florida driver's license, and two fraudulent United States Social Security Account Number Cards, with document-making implements that had traveled in interstate commerce as described in Count 1.

18 U.S.C. § 1028(a)(1)
18 U.S.C. § 1028(b)(1)(A)(i)
18 U.S.C. § 1028(b)(1)(A)(ii)
18 U.S.C. § 1028(c)(1)
18 U.S.C. § 1028(c)(3)(A)
18 U.S.C. § 2

## COUNT 5

### (Unlawful Transfer of False Identification Documents)

On or about July 21, 2011, in Ingham County, in the Southern Division of the Western District of Michigan,

**JEFFREY LONDELE PETTWAY,**

defendant, did knowingly transfer false identification documents that appeared to be issued by or under the authority of the United States and the production of which was in or affected interstate commerce, knowing that such documents were produced without lawful authority.

Specifically, defendant **JEFFREY LONDELE PETTWAY** knowingly transferred one fraudulent Illinois driver's license, one fraudulent Florida driver's license, and two fraudulent United States Social Security Account Number Cards, which had been produced with document-making implements that had traveled in interstate commerce as described in Count 1.

18 U.S.C. § 1028(a)(2)
18 U.S.C. § 1028(b)(1)(A)(i)
18 U.S.C. § 1028(b)(1)(A)(ii)
18 U.S.C. § 1028(c)(1) and (c)(3)(A)

## COUNT 6

### (Unlawful Production of False Identification Documents)

On or about August 10, 2011, in Ingham County, in the Southern Division of the Western District of Michigan,

**MARK NOWELL BASNIGHT, and
JASON LANELLE TOWNSEND,**

defendants, did knowingly and without lawful authority produce, and did aid and abet Eric Deshawn Pettway in the production of, false identification documents that appeared to be issued by or under the authority of the United States and the production of which was in or affected interstate commerce.

Specifically, defendants **MARK NOWELL BASNIGHT,** and **JASON LANELLE TOWNSEND** produced, or aided and abetted Eric Deshawn Pettway's production of, one fraudulent Michigan driver's license and one fraudulent United States Passport Card, with document-making implements that had traveled in interstate commerce as described in Count 1.

18 U.S.C. § 1028(a)(1)
18 U.S.C. § 1028(b)(1)(A)(i)
18 U.S.C. § 1028(b)(1)(A)(ii)
18 U.S.C. § 1028(c)(1)
18 U.S.C. § 1028(c)(3)(A)
18 U.S.C. § 2

## COUNT 7

### (Aggravated Identity Theft)

On or about August 10, 2011, in Ingham County in the Southern Division of the Western District of Michigan,

**MARK NOWELL BASNIGHT,**

defendant, during and in relation to the unlawful production of false identification documents in violation of 18 U.S.C. § 1028(a)(1), as charged in Count 6 of this Indictment and incorporated as if alleged herein, did knowingly transfer, possess, and use, without lawful authority, and aided and abetted Eric Deshawn Pettway in the transfer, possession and use, without lawful authority, of a means of identification of victim M.B.G.

Specifically, defendant used, or aided and abetted the use of, M.B.G.'s name, date of birth, driver's license number, and social security account number, to produce and transfer, without lawful authority, a Michigan driver's license and a United States Passport Card.

18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 1028A(c)(4)
18 U.S.C. § 1028(a)(1)
18 U.S.C. § 2

A TRUE BILL

_____
GRAND JURY FOREPERSON

PATRICK A. MILES, JR.
United States Attorney

_____
RONALD M. STELLA
Assistant United States Attorney